May it please the Court. Good morning, Your Honors. Owen Mardikin for the United States. I'd like to reserve two minutes for rebuttal. The Sixth Amendment protects the right to a speedy trial. It does not just protect the right to a speedy federal trial. The District Court erred in dismissing the indictment in this case for three reasons. First, it ignored this Court's concern with federal interference in state pending proceedings. Second, it held that the speedy trial clause requires pulling a defendant out of pending state proceedings simply because a federal proceeding has begun. And third, it considered a prejudice claim without reference to this Court's decision in Gregory that requires some nexus between the prejudice and the claim delay. This Court has found that concepts of federalism do not give way, at least in the Speedy Trial Act context, whenever a federal indictment is filed. In Lopez-Espindola, this Court noted, quote, it was its considered judgment that it is only in exceptional cases that a federal court should exercise the discretion to interfere with criminal proceedings in the state court. Now was it a deliberate What's the record tell us? Was it a deliberate decision to hold off, or did the feds just kind of drop the ball? In this case, the record says that the AUSA told the trial judge that they were waiting for the state proceedings to end. The agent in his declaration says that it was their practice to wait for state proceedings to end before proceeding. Somehow I got the sense from the record that there might have been a little bit of we dropped the ball. Am I wrong? I don't think so, Your Honor, because it was just six. You don't think I'm wrong? No, I don't think that anyone dropped the ball in a Speedy Trial Clause way, because it was just six weeks after the state proceeding ended that the written decision. No, no, no. You qualified drop the ball in a Speedy Trial Clause way. Right. Is it drop the ball in some other way? Well, I mean, I think there are. There's a long time that elapsed in which the feds essentially did nothing. They don't notify them, nothing. Well, first of all, it's not necessarily the practice to notify someone of a pending indictment. Indictments are often sealed. I understand that. So in the Speedy Trial Clause context, or frankly, in a practical context, that's not necessarily done. As I read the district court's colloquy here, I thought the district court was concerned because there was no detainer. Correct. Filed. And so the government didn't do anything to indicate that it wanted to bring this, haul this guy in when he'd been finished up in State court. And going back to what Judge Fletcher just asked, whether or not the federal government dropped the ball, you referred to the AUSA stating that they were waiting, which suggests that they were aware of what was going on. But what evidence actually is there besides his statement saying that they were waiting and that there is this declaration from the ATF that it's their custom and practice to take certain steps? What actual evidence is there in this case? Well, there's also the police report at page 79 of the excerpts of record where the police officer during the after the second gun arrest says that he confirmed with ATF. Does it say confirmed with ATF, or he just says it confirmed? He could have confirmed with the district court, clerk. He could have confirmed with someone else. It doesn't say confirmed with ATF, does it? There is a reference to ATF, yes. Well, there's a reference to ATF in terms of the warrant. But in terms of the actual conferring with or confirming, it doesn't say confirming with ATF, does it? Well, I guess, I mean, it could be grammatically read both ways. I can see that, Your Honor. But I think the critical point and the point with the detainer is that what the detainer does is bring the defendant over after the proceedings are done. So the interest, the Speedy Trial Clause interest, as this Court noted in Mendoza and as the Supreme Court noted in Doggett, is bringing the defendant over for the Federal trial. What I think the district court suggested, which I think is an error, is that in the district court's order, she says, well, why didn't they just writ him over? Why didn't they? It's really not the detainer. The court says they should have written him over immediately to have the Federal court case begin. Now, in the Speedy Trial Clause context, that does him no Sixth Amendment benefit. Either he could have been written over, arraigned, and then sent back to the State court, which would have done him really no good as far as the Speedy procession of this Federal case, or he could have been written over and then kept in Federal court for the Federal case with all the State court cases languishing and the attendant Sixth Amendment problems that would have happened on the State side. Well, it would have given him notice that the government was going to be after him once he finished with the State court proceeding. It would have, but the Sixth Amendment Speedy Trial Clause isn't about notice. It's about bringing the defendant to trial. In many cases, the Federal government has good reasons for not notifying the defendant. So the Sixth Amendment doesn't require that the defendant be notified. It requires that they get a Speedy trial. In this case, the diligence was the reasonable diligence in bringing him over as soon as he was finished with the State court proceedings. Six weeks after the last State court proceeding is finished, the writ is issued, and the Federal wheels start turning to bring him over. What's the timing of the disposition, the disposal of the car vis-à-vis the filing of the indictment? The indictment was filed in January of 2012. The car was sold, in the defense witness's words, sometime in August of 2012. So six months. So if you had notified him of this indictment, he might have done something to preserve that evidence of the tinted windows. Well, I think, first of all, that assumes that he didn't know about the indictment, which is an assumption that no one actually makes. The district court doesn't say. It says that the record is silent about whether he knew, and the defense certainly doesn't make the statement that he did not know about the indictment. So I think that is somewhat speculative. But second of all, you know, I think that that to ask that question is kind of to divorce the issue from the presumptive prejudice analysis, which is what this Court was talking about in Gregory. If something happens so soon after indictment that it wouldn't matter from a Barker v. Wingo perspective, then it shouldn't be considered prejudice for the speedy trial clause just because it might be prejudicial in the abstract. Yeah. Let me ask a little bit more about the tinted windows and so on. What time of day was the arrest? I believe it was at night, but I actually can't answer that question. It might have been dusk. I understand from my reading of the record that it was at night. And I gather that there were two things that were adverse to him that might have been, might have come out the other way had he been able to convince the trier of fact that the windows were tinted. Number one, the police officer says, I saw him reach toward the back. Number two, this shows up in a footnote in the district court's order, apparently one of the officers testified that the gun was in plain view in the car. Well, if it's night and we got tinted windows, there's reason to think that was going to be pretty hard to see in plain view. So I do think the fact that the tinted windows weren't available might have hurt him. Now, given the timing that we're just discussing, it may or may not be something that is cognizable. I get that point. But I have to say I'm a little distressed that he had something that was going to help him that he turns out not to have. True, but he had two witnesses. He had the seller of the car and he had the purchaser of the car, both of whom could have testified, perhaps even more persuasively than a simple photograph in the courtroom, which may not have actually shown as much as he intended it to show, just by the nature of photographs. And I see I'm down to a point where I'd like to reserve some time for rebuttal. Now, I'd like to say one thing, and this won't take away from your time. You know, there's been a back and forth very recently between you and your adversary concerning the letter he sent with respect to the timing of the burglary offense. And you point to a paragraph in your reply brief on page 14 in which you say, listen, I did it. I did what you asked or something. You know, what you write is, Sanders claims that he committed the burglary before rather than after the federal indictment, but concedes that the record does not resolve the issue. The government will accept that he committed the burglary before the federal charge. Well, you had at the time you wrote that brief, I think, clear evidence that he committed the burglary not merely before the federal charge, but before he was arrested on the charge that's now at issue. Why didn't you just say so? Well, I didn't merely say that I accepted that fact, which we do accept. I then relied on it in the rest of the paragraph to make an argument. But, no, the way you say it here is intended to cast some doubt on it. When you knew perfectly well that the burglary offense had taken place before this gun offense, why didn't you just say it? Well, I agreed that it took place. I thought that by saying I accepted the fact, it was the same as saying I admit to the fact. We all know lawyer talk. When you say he claims and we accept, what that signals to me is you're willing to accept it for purposes of argument and so on. That's a way of distancing yourself from it. This is a small point, but I would have preferred that you just say exactly what you mean and what you knew to say exactly what you knew to be true. Understood. Thank you. May it please the Court. Good morning. My name is Ethan Ballow, and this morning I speak for Toreo Sanders. The government attacks Chief Judge Wilkins' careful and accurate balancing of the factors by taking a divide and conquer approach, which is inconsistent with what the Supreme Court teaches on how it's supposed to be weighed. But I'll take them as their attacks go, and we'll begin with the second Barker factor. I think it's important to note that the government's argument has changed substantially. The argument they made to the district court may be summarized as follows. Their opposition brief at page 7. This is docket 19 of the district court. It would not make sense to blame the government for the defendant's continuing crime spree up and down the state or to hold defendant's poor judgment and conviction against the government. At the oral argument before Chief Judge Wilkins, Turing made the reason for the delay. The government argued, quote, unfortunately the defendant was released two days later from state custody and went on to commit additional crimes in different jurisdictions in the state and was not then able to be picked up on the warrant from the federal government. ER 62 and 63, my last point. Sanders is to blame because he was, quote, racking up new crimes in the meantime. Now, even in their opening brief at page 11, they repeat these allegations. Those have been proven to be inaccurate. But have you shown that they knew then that it was inaccurate? Our position is the record shows that they did nothing. Chief Judge Wilkins probed them repeatedly. When did you know what you know? When did you find out there was a detainer? The OUSA, which was a woman, it wasn't a he, Judge Curiel, it was a she, said she doesn't know when they learned about that he was picked up in state court. They forgot about him. Chief Judge Wilkins said, well, when you issue an indictment and you say you're going to issue a detainer, you know the state court's going to dismiss charges. Yes. He's going to show up a couple days. Yes. When he didn't show up, what did you do? I don't know. They didn't have this information. And so Chief Judge Wilkins correctly found that they were negligent, and that's subject to a clear error standard under Williams. And now, after being found negligent, they changed their argument to the academic argument is they would have been stymied by the simultaneous prosecutions. I think that's disingenuous at best. Your Honor asked a direct question, was this deliberate? Your Honor, did not get an accurate answer. Didn't get any answer. This was. I didn't say, was this deliberate. I said, did you drop the ball? Right. And were they deliberately waiting? Were they aware that he had gone to Tulare in real time, and Visalia in real time? And they weren't aware. And we know that because, one, the case agent left. And if you look at the case agent's declaration in this case, a new case agent came on in March 2013. That's when they got back on the ball. The new case agent said he researched Mr. Sanders' custodial status and his history throughout the case on June 24th, 2013, the day before the government filed its opposition to my brief. So I think there's five reasons why you should reject their argument on trying to overturn the negligence finding. One, it's a new argument that's based on fact that's not in the record. That's waiver under Carlson. Two, it's just factually not true, as I've suggested and stated in my brief. They were not aware of him. They repeatedly inquired. Let's assume that they were negligent. Where do you go from that? Well, Judge ---- On a constitutional violation. Well, I go with two ways. I'll start with the facts and I'll go with the law. Factually, one thing that's missing is he was in Alameda County custody in Oakland, California, which sits across there, and northern California, 450 Golden Gate. Our prisoners, my clients on CJA cases, are housed in Alameda County Jail, either Santa Rita, where Mr. Sanders was, or Glendyre County Jail. So there would have been no problem in bringing him over. This isn't an academic problem. Every day, today included, there's a bus from Santa Rita going to 450 and going to 1305. Every day there's a bus going from Glendyre to both locations. When queried by the government, the outset admitted, yes, we do rip people over here, so we had him available. We could have done it factually. It would have been easy, and we didn't do that. Why? I can't tell you why. Legally, the oldest case we have is Graham. Graham says, and again, this locality, Marin, California, Mendoza repeats it, Tercero repeats it with state prosecutions, which is there has to be reasonable diligence, and when the government is aware of someone's location, it has to make some efforts. And most importantly for Graham, a 1976 case, it says an NCIC warrant alone is not enough. I'd also note that as a matter of sense, I have a problem with the government's presentation, because what they told Judge Wilkin was, you should find that the new case agent found a note in the file that said he was going to file the detainer. So we say the way the evidence shows that was done, and he would have been brought here. Now before this court, they say, no, no, no, it's our practice to serve the warrant and wait. But in the district court, it was their practice to put the detainer on, and we know this. If the original case agent on January 26, consistent with the indictment, had filed the detainer, the next week Torrio Sanders would have shown up before the magistrate judge. The call would not have been sold. He would have been prosecuted immediately. He would not have lost evidence, and he would have had the opportunity for a fair trial. And the negligence that caused this was the government's negligence. There's a box on the pre-indictment sheet, the cover sheet, that asks the prosecuting attorney to let the court know, has the government taken the step of filing a detainer? That's the normal practice. And to tell this court, no, no, that's not the normal practice, then why is a United States-generated form that they created, it's not a judicial form, it's their form, on what steps they're taking to secure a defendant, why would they list it unless it was located there? Let me ask you something. Yes. Regardless of whether or not the government was or was not aware of your client being in custody in Alameda or Tillard County, isn't the government right that the court should consider the issue of Federal interference in terms of interfering with an ongoing state proceeding? Clearly, by early 2000, I guess it's 2011, you have a burglary prosecution going forward. And so that the issue of Federal interference is fair game in terms of consideration. I think that's unfair. I think that's, I would disagree for a number of reasons. One, factually, to suggest interference, they do have to know about it. They can't, at the end of their negligence that prejudiced my client, say, we escaped our responsibility because this academic thing we didn't know about could have affected us. That's not fair to Mr. Sanders. And it's inconsistent with Tercero, which is from 1980, where they said there could be two state court prosecutions. Two, the Lopez case, my colleague Mr. Mardigan relies on, is a speedy trial act case. It's not a Sixth Amendment case. And the two Sixth Amendment cases that control are the ones the government cited to Judge Wilkin and that she relied upon, Graham and Tercero. Three, this is a second-in-time prosecution. So to the extent someone should wait, it would be Tulare County. They later brought these charges because Mr. Sanders had been released. Had the government done its job and not been negligent, Mr. Sanders shows up in federal court the last week of January. He doesn't get charged in Tulare County until after this case is over. The notion that the government can charge him, ignore him, and then by happenstance have him go around creation and say, well, we would have interfered. No, the state was interferinging with us. The reason the state was able to do so is because the executive was negligent. They were beyond passive. They did nothing. That's the finding in the record. And that's not clear error. The argument made to district court, which I think resolves well, to the extent the government is telling this court that an NCIC warrant is the only thing they do and it's their practice, Graham says on its face that's not enough. And that would establish reckless indifference to their obligations to Mr. Sanders. The truth of the matter is plain. A case agent made a mistake and left the case and they forgot about Sanders. On balancing the Barker factors, the district court was entitled to find that that passivity was negligent. And under Williams, you'd have to find that's clearly erroneous, that she was irrational for making that decision. As you know, Judge Wilkin is a careful judge. She's not a willy-nilly judge. She worked through this record and did the balancing and found that it was negligence on the government and that should be upheld on appeal. The last argument I'd like to address, if I may, is the government's claim that the prejudice is untethered to the delay. And I'd make two arguments, if I may. One, it's waived. They did not make that argument to Judge Wilkin at all. The argument they tell this court is, well, they didn't have a chance to because it was late. And I would respectfully suggest that is not true. My reply declaration during the briefs made the exact same declaration we would get from Broderick Tyson the next day. I made an information brief because we couldn't get to Tyson. But the issue was joined and then we immediately got him to sign it so it was on penalty of perjury. At the argument, the government never claimed it was late. They never claimed it had to be tethered. And now we have a factual dispute that the district court could have resolved had the government raised their hand, had they said I was late, had they said they disputed it. The factual dispute being what? Whether it was late. Whether they had an opportunity to make this argument they're making for the first time on appeal. They had this nexus argument. One, we know the car was sold in August, but we don't know when the tint was removed. And so they could have made it this casual nexus was an argument they wanted to resolve. But does the record show that there were witnesses who could have testified? Well, Broderick Tyson could have testified, but the district judge found losing physical corroborative evidence is important to a defendant and affects the defense in a meaningful way as opposed to a witness swearing contest between sworn officers in uniform and people with criminal records. Did the officers swear that there was no tint?  They made no mention of the tint. The other thing I'd mention is to the extent you don't find waiver under Carlson, Valentine shows that six months in a 922G case is enough to have it considered as tethered to prejudice and the car was sold after six months. So we do have a casual nexus if the court reads Gregory as the government wants it to read. So we do have that issue in any case. The last thing I would say is that the true tethering in this case is the facts that drove Judge Wilkin, which is had the government filed the detainer, had they not been negligent in that first instance, Torrio Sanders shows up in February 2012 at the latest and nothing is sold and he gets a fair trial. To the extent that's been prejudiced has been by my colleagues in a constitutional sense, we respectfully ask you to affirm Chief Judge Wilkin. Thank you, Your Honor. You've saved some time. Thank you, Your Honor. Your Honors, I'd like to make five points for rebuttal if I have the time. First, the representation just made that the Tulare County charges came after the Federal charges is incorrect. And that's cleared up on page 41 of the excerpts of record. At the time the Federal indictment was brought, there were already three pending state charges. The Alameda County drug charge, the Tulare County parole violation based on it, and third, a preexisting Tulare carjacking case. And that's the defense counsel admitting that at page 41 of the record. So it's not true. And the speedy trial clause for those state proceedings then accrued upon his arrest before the Federal charge even came down a month later. Second of all, the Graham case, there are two reasons, I think, why the Court shouldn't pay attention to it in this context. First, negligence was conceded. The government conceded negligence in that case, so the Court didn't really need to look at it carefully. Second of all, that's about negligence after the state sentencing. The Court relies on Smith v. Huey, which is a Supreme Court case that is all about delay after sentencing, which is, of course, a completely different issue than delay during pending state proceedings. Third, the idea about Gregory not applying, first of all, because of the waiver. Yes, he mentions something about tinting in his reply declaration, but with no specifics as to time. He just says, well, we think sometime later the tinting was too long. Go ahead. The record will speak for itself. The Court can see the reply declaration with contrast to the actual declaration that came much later. Also, the reference to Valentine is not the current law. It came before Doggett, and this Court in Lamb said that eight months is now considered the threshold minimum. Fourth, the argument that we changed our argument from the district court. In the district court, we told the district judge that it was practice to wait for the end of state proceedings. That's at page 17 and 19 of the excerpts of records. So it was not somehow a new argument on appeal. And finally, the argument about this detainer and about negligence is really divorced from this E.D. trial clause analysis. To simply say that the government admitted at that hearing at the time it didn't know whether the detainer was faxed over to the jail or not. But the point of the detainer is to bring the person over after state proceedings are done. So it's maybe negligence in some abstract way, but not in the context of this E.D. trial clause. And thank you, Your Honors. Thank you very much. Thank you both for your arguments. United States v. Sanders is now submitted for decision.
judges: Curiel, SCHROEDER, FLETCHER